Linda L. DENNIS (f/k/a
Smith), Appellant,

v.

Glenn Walter SMITH, Appellee.

No. 01–96–00177–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 30, 1997.

Rehearing Overruled Jan. 2, 1998.

Shawn Casey, Houston, for Appellant.

John K. Grubb, Houston, for Appellee.

Before COHEN, HEDGES and O'CONNOR, JJ.

## OPINION

COHEN, Justice.

Appellant, Linda Dennis (Linda), complains of the provisions in her divorce judgment on conservatorship, child support, and mediation. We reform and affirm.

### Facts

Linda sued her husband, Glenn Walter Smith (Glenn), for divorce. By agreement, they were appointed temporary joint managing conservators of MDS, who was then almost four years old. Glenn was given physical possession of MDS for approximately 38% of the year. Linda had possession the rest of the time, had the exclusive right to establish MDS's legal domicile within Harris County, and had the right to select MDS's school after conferring with Glenn. The parties stipulated and the trial judge found there was good cause for not ordering either party to pay child support to the other. However, both were ordered to provide MDS clothing, food, shelter, medical care, and education. Later, at trial, the judge found that the "parties operated with no child support either way for two years; they pretty well split things down the middle; Glenn ... has paid all medical expenses and insurance," and that, the agreed temporary orders that required no support payments had "promoted cooperation between the parties and benefitted" the child.

At trial, the parties waived a jury and agreed to be named joint managing conservators. The judge appointed Linda as the "primary possessory parent,"[1] but gave Glenn the exclusive right to establish MDS's legal domicile and residence in Harris County and to select MDS's school. Both parents were ordered to support MDS by providing clothing, food, shelter, medical care, and education, but the judge again found good cause for not ordering either to pay money to the other. Glenn was ordered to provide MDS with health insurance. If a dispute arose, the party desiring judicial relief was required to pay for three mediation sessions before suing.

### Standard of Review

Trial judges have wide discretion with respect to custody, control, possession, support, and visitation matters involving the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982) (custody); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (child support). We will reverse only if the judge abused her discretion by acting without reference to any guiding rules or principles or by acting arbitrarily or unreasonably. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). There is no abuse of discretion if some evidence supports the decision. *Holley*, 864 S.W.2d at 706.

### Rights of Joint Conservatorship

In point of error one, Linda complains the trial judge abused her discretion in awarding Glenn the exclusive right to select MDS's domicile and school.

In determining such issues, the child's best interest is the primary consideration. TEX. FAM.CODE ANN. § 153.002 (Vernon 1996). There is a rebuttable presumption that joint managing conservatorship is in the child's best interest. TEX. FAM.CODE ANN. § 153.131 (Vernon 1996). In appointing joint managing conservators, the court shall:

(1) establish the county of residence of the child until altered by further order, or designate the conservator who has the exclusive right to determine the primary residence of the child;

(2) specify the rights and duties of each parent regarding the child's physical care, support, and education;

(3) include provisions to minimize disruption of the child's education, daily routine, and association with friends; ....

TEX. FAM.CODE ANN. § 153.134(b) (Vernon 1996). Ordinarily, the court in a joint managing conservatorship must designate the

---

1. The Family Code does not define "primary possessory parent."

child's primary physical residence. TEX. FAM.CODE ANN. § 153.136 (Vernon 1996).[2]

Linda contends that awarding Glenn the exclusive right to establish MDS's legal domicile and residence within Harris County requires her to move if Glenn moves, thus making her "nothing more than a nanny serving at her ex-husband's convenience." She contends this conflicts with her designation in the decree as the "primary possessory parent." Linda relies on the following *dictum* in *Leithold v. Plass,* 413 S.W.2d 698, 700 (Tex.1967):

> Custody of a child connotes the right to establish the child's domicile and includes the elements of immediate and direct care and control of the child, together with provisions for its needs. These rights inherent in a custody status are not held by one enjoying visitation rights....

*Id.* (citations omitted). She argues that this language means that because she has "custody" of MDS, she should have the exclusive right to determine MDS's place of residence.

We disagree. The decision in *Leithold* is based entirely on common, judge-made law. It preceded the enactment of the Family Code, specifically section 153.131, which makes joint custody the public policy of this state. Under today's law, Glenn is not "one enjoying visitation rights." *Leithold,* 413 S.W.2d at 700. He is a "joint managing conservator." Both he and Linda have "custody" and legally shared responsibility for MDS. Neither has "visitation rights."

Moreover, *Leithold* had nothing to do with the issue before us. The issue there was whether ordering visitation in California for two weeks a year constituted a "change of custody," as the intermediate court had surprisingly held, or merely a change in visitation. 413 S.W.2d at 700. Naturally, the supreme court held it was a change in visitation, reversed the lower court's judgment, and approved the change in visitation. Thus,

although correctly decided, *Leithold* is inapplicable.

The *Leithold* opinion went on, however, to justify itself by describing what "custody" was and by showing how the minor change in visitation did not affect custody. To show that, it stated the *dictum* quoted above. That language does not change the result here. Joint managing conservatorship "does not require ... equal or nearly equal periods of physical possession...." TEX. FAM.CODE ANN. § 153.135 (Vernon 1996). Both conservators share joint responsibility for the child. *See* TEX. FAM.CODE ANN. §§ 153.131(b); 151.003; 153.133–.134 (Vernon 1996). That is a fundamental difference from the law in effect before section 153.131 was enacted. The law then considered the non-custodial parent to be one having "only the occasional right of visitation." *Leithold,* 413 S.W.2d at 702, n. 1 (Norvell, J., dissenting). The dissent in *Leithold* contains arguments against "the evil" of "split custody," which was condemned for requiring that the child be "hawked about from one parent to the other...." *Id.* at 704. Moreover, the law then endorsed sex discrimination in favor of women, giving them preference in child custody cases. *Martin v. Martin,* 132 S.W.2d 426, 428 (Tex.Civ.App.—Waco 1939, no writ), *cited with approval in Leithold,* 413 S.W.2d at 704 (Norvell, J., dissenting) (citing *Martin* as the "leading and most often cited case" in Texas).

■ We have come a long way since then. Such sex discrimination is now illegal. TEX. CONST. art.I., § 3a; TEX. FAM.CODE ANN. § 153.003 (Vernon 1996) (in deciding conservatorship, possession, and access); TEX. FAM. CODE ANN. § 154.010 (Vernon 1996) (in determining child support); *In re McLean,* 725 S.W.2d 696, 697–98 (Tex.1987). That is a major reason why we have a joint managing conservator statute today. The law no longer presumes that the mother is the better parent to raise the child. But even if the

---

2. The decree provided:
   > IT IS ORDERED AND DECREED that the legal domicile and residence of the child shall be Harris County, Texas, until further order of this court, and the parties are enjoined from removing the child from HARRIS County, Texas for the purpose of changing the domicile

until altered by further order of the court of continuing jurisdiction. It is further ORDERED that GLENN WALTER SMITH shall have the exclusive right to establish the legal domicile of the child within Harris County, Texas.

*dictum* in *Leithold* were the holding, it would still be clear that the Family Code has passed it by. Thus, just as there is no longer a presumption that the mother should raise the child, there is no presumption that the conservator with the longer period of possession should decide where a child lives or goes to school. The issue is not, is someone being made a nanny? The issue is, what is in the child's best interest?

Did the trial judge abuse her discretion by concluding that the child's best interests were served by entrusting such decisions to Glenn? Not in light of the following findings of fact, most of which are not attacked by Linda on appeal: [3]

5. The parties separated in September 1993, when the child . . . was approximately three years old.

. . . .

7. [MDS] was born to the parties on September 27, 1990.

8. Linda Dennis Smith stayed home with [MDS] until he was almost eleven months old.

9. Glenn Walter Smith worked a lot of overtime and went to night school during [MDS's] first eleven months.

10. The parties entered into Agreed Temporary Orders.

11. The parties owned a house together; when they separated, Linda Dennis Smith moved into an apartment and Glenn Walter Smith stayed in the house.

. . . .

13. Linda Dennis Smith has a mother, father and three sisters living; [MDS] has seen his maternal grandparents infrequently and only one of his mother's sisters.

14. Glenn Walter Smith has a mother, father, three brothers and a sister living; Glenn Walter Smith has a close family; they are decent people; they help each other.

15. Glenn Walter Smith's parents and Linda Dennis Smith's sister provide back up.

16. At the time Linda Dennis Smith was claiming that a joint managing conservatorship was not working, Dr. Sallye Webster found that for the parties to effect a joint managing conservatorship and make it work for the parties and their son, that both parents should be involved in all of [MDS's] activities and should encourage the development of relationships with the extended families.

17. Glenn Walter Smith and Linda Dennis Smith do a good job keeping each other informed about day care, doctors, extracurricular activities, pick-ups and deliveries.

18. The parties have been following essentially the same periods of possession since February, 1994.

. . . .

20. Linda Dennis Smith and Glenn Walter Smith believe it is in [MDS's] best interest to have time with both parents; that [MDS] be able to talk on the phone frequently with both parents; that it is [MDS's] best interest for both parents to participate in extracurricular activities with [MDS]; that its in [MDS's] best interest to have access to the doctors.

21. Linda Dennis Smith does not want to be restricted to living in Harris County with [MDS] however, she does want Glenn Walter Smith to be restricted to living in Harris County with [MDS].

22. Linda Dennis Smith believes she should be able to move [MDS] away from Glenn Walter Smith, but Glenn Walter Smith should not be able to move [MDS] away from Linda Dennis Smith.

23. Linda Dennis Smith does not want to consult with Glenn Walter Smith before she takes a job anywhere and wants to be able to take [MDS] wherever she happens to be going.

24. At the time of trial, the parties had been able to make arrangements to pay for

---

**3.** Linda attacks findings 14, 16, 21, 26, and 27, according to a listing under point of error one, but none are mentioned in the argument under point one. Nevertheless, the record supports every one, except it mentions only two of Glenn's living brothers, rather than three. See finding 14, below.

day care, swimming, soccer, etc., and, [MDS] has not suffered from a financial standpoint.

25. Linda Dennis Smith has no plans to move, but if she remarries, she wants to be able to move, even though it would not be healthy for [MDS] to be away from his dad.

26. Dr. Richard Austin, a clinical psychiatrist, evaluated Glenn Walter Smith and his parenting ability and skills; Glenn Walter Smith has an excellent grasp of parenting and emotional needs of children; Glenn Walter Smith has good consistency and discipline; Glenn Walter Smith scored in the upper 10% of the custody quotient; he has the ability to focus on the needs of the child; he orients towards putting the child's needs first; Glenn Walter Smith is strongly committed to the least disruption of the child and the prevention of the loss of either parent; that Glenn Walter Smith will encourage [MDS] to maintain a frequent and continuing relationship with his mother; Glenn Walter Smith has a superior level of intelligence.

27. Linda Dennis Smith does not know what school [MDS] would attend based upon the residency of her apartment.

28. Linda Dennis Smith is dating a man that has a house about 15 miles away; marriage is a possibility; she does not know what school district his house is located in.

29. Glenn Walter Smith is more focused on [MDS's] activities; Linda Dennis Smith is more relaxed.

. . . .

31. When [MDS] is with Glenn Walter Smith, he plays with neighborhood children—at their house and at Glenn's house.

32. [MDS] has a good relationship with his father; obeys his father; is relaxed around his father; that Glenn Walter Smith is considered a good parent.

33. That at Glenn Walter Smith's house, [MDS] would go to Clark Elementary School in the Spring Independent School District and it is a good school.

34. Glenn Walter Smith was involved in [MDS's] life from the very start; that he took a training class to take care of babies.

35. When Linda Dennis Smith returned to work, both parents shared parenting duties; Glenn Walter Smith took [MDS] to his care giver at least half of the time and took [MDS] to the doctor.

36. Glenn Walter Smith has a three bedroom house; [MDS] has his own room, a little garden in the back along with a dirt pile; it is the only house [MDS] has ever known.

37. [MDS's] house is about thirty seconds from the local school and the neighborhood is filled with children.

38. Glenn Walter Smith will enroll [MDS] in Clark Elementary School; its one of the highest rated schools in the area.

39. Glenn Walter Smith's house is a seven minute drive from Linda Dennis Smith's apartment; a ten minute drive from his work; a seven or eight minute drive from [MDS's] day care; a fifteen minute drive from [MDS's] paternal grandparents house.

40. Linda Dennis Smith's place of employment is 35 to 40 minutes away from Clark Elementary and the day school.

41. Glenn Walter Smith is close to his parents; his father is retired; his parents have been married 43 or 44 years; they have taken care of [MDS] when he is sick; [MDS] goes over to his grandparents frequently.

42. [MDS] has one uncle and aunt by marriage on his father's side of the family with two cousins that he sees; that [MDS] has one uncle on his father's side of the family working on a degree at A & M and is close to him.

43. Glenn Walter Smith is willing to be restricted if given the right to establish [MDS's] residence and domicile.

44. Glenn Walter Smith and Linda Dennis Smith have been able to work together for [MDS's] best interest and show up together for extracurricular activities.

45. Glenn Walter Smith has sought a lot of parenting advice and guidance, read a

lot of publications and attended parenting classes.

46. The parties have operated with no child support either way for two years; they pretty well split things down the middle; Glenn Walter Smith has paid all medical expenses and carries insurance.

47. Linda Dennis Smith has a quick temper.

48. Linda Dennis Smith doesn't really appreciate a family structure; Glenn Walter Smith does.

49. Glenn Walter Smith is very family oriented.

50. Glenn Walter Smith has a large support network.

The trial judge's findings concerning Glenn's parenting skills, training, and devotion, his family support, Dr. Austin's opinion of Glenn, along with the absence of Linda's family support, Linda's lack of appreciation for family structure, Linda's quick temper, Linda's ignorance of what school MDS would attend based on her apartment's location, and Linda's relaxed parenting behavior all support the trial judge's decision to let Glenn decide where MDS lives and learns. The trial judge did not act without reference to guiding principles and did not abuse her discretion.

We overrule point of error one.

### Child Support

In point of error two, Linda contends the trial judge abused her discretion by not requiring Glenn to pay child support.

The decree provides:

It is ORDERED AND DECREED that GLENN WALTER SMITH and LINDA DENNIS SMITH, have the concurrent duty to support the child, [MDS], including providing the child with clothing, food, shelter, medical care and education. The court finds that good cause exists for not ordering either party to pay child support to any other party for the support of the child, [MDS].

Glenn was ordered to maintain health insurance for MDS. Each party was to pay 50% of any uninsured medical expenses.

Glenn's monthly net resources were found to be $2,396.87, and Linda's were $1,917.39. The judge found Glenn's monthly child support obligation under the child support guidelines would be $479.37 (20% of $2,396.87), and Linda's would be $383.48 (20% of $1,917.39). *See* TEX. FAM.CODE ANN. § 154.125(b) (Vernon 1996). The judge's five reasons for deviating from the guidelines are discussed below.

Support conforming to the guidelines is presumed to be in the child's best interest. TEX. FAM.CODE ANN. § 154.122(a) (Vernon 1996). The presumption is rebuttable by evidence that shows a variance is in the child's best interests. TEX. FAM.CODE ANN. § 154.123(a) (Vernon 1996). In determining whether to vary from the guidelines, the court shall consider evidence of all relevant factors, including:

(1) the age and needs of the child;

. . . . .

(4) the amount of time of possession of and access to a child;

. . . . .

(12) provision for health care insurance and payment of uninsured medical expenses;

. . . . .

(16) debts or debt service assumed by either party; and

(17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

TEX. FAM.CODE ANN. § 154.123(b) (Vernon 1996). An order of no child support has been upheld against a claim of abuse of discretion, even though the difference in the husband's and wife's earnings was much greater than it is in this case. *Sanchez v. Sanchez*, 915 S.W.2d 99, 103 (Tex.App.—San Antonio 1996, no writ) (Lopez, J., dissenting.).

The judge stated five reasons justifying her decision to vary from the child support guidelines.

### 1. *Joint Managing Conservatorship and Amount of Time of Possession*

The judge's first reason was:

Both parties are appointed Joint Managing Conservators and will spend substantial time with the child.

Glenn will have the child approximately 38% of the year, a "substantial time." This is a factor the judge was required to consider. TEX. FAM.CODE ANN. § 154.123(b)(4) (Vernon 1996). By doing so, she acted with reference to a guiding principle, as she was required to do in exercising her broad discretion.

### 2. *Agreed Temporary Orders*

The judge's second reason was:

Under the terms of the agreed Temporary Orders the parties agreed to no periodic support and a joint obligation to child support. The joint obligation to support their child as agreed in the Temporary Orders has promoted cooperation between the parties and benefitted [MDS].

The judge found that the parties had functioned for over two years, *i.e.,* the entire time from their separation until trial, without either paying child support to the other. This was by their express, court-approved agreement for five months and by informal agreement for the preceding 20 months. The trial judge found (finding of fact 24) that the parties had "been able to make arrangements for daycare, swimming, soccer, etc. and [MDS] has not suffered from a financial standpoint." The judge's finding that [MDS] had not suffered is well supported in the record. Linda does not argue to the contrary.

The judge's finding 46 is also supported by the record:

The parties have operated with no child support for two years. They pretty well split things down the middle; Glenn ... has paid all medical expenses and carries insurance.

The record strongly supports the finding that the parties have cooperated and that has benefitted [MDS]. The judge attributed this to the "joint obligation to support their child as agreed...." Linda points to no evidence the contrary. Rather, she argues that "any

spirit of cooperation existing at the time the temporary orders were entered has to be considered a thing of the past in light of the parties' subsequent need to litigate the child related issues of access and support." Given the parties' successful and agreed two-year experience without periodic payments, we cannot say that the judge abused her discretion simply because various issues were contested at trial.

### 3. *Glenn's House*

The judge's third reason was:

GLENN WALTER SMITH will maintain a house for [MDS].

By agreement, the judge awarded the house to Glenn and ordered him to pay the mortgage and to hold Linda harmless from that debt. Glenn testified he intended to keep the house for MDS; however, he would probably lose it if he were ordered to pay child support because his financial situation is "tight."

Assumption of debt is a factor the judge had to consider in deviating from the guidelines. *See* TEX. FAM.CODE ANN. § 154.123(b)(16) (Vernon 1996). She did so, thus acting with regard for a guiding principle.

Linda complains that this factor does not support the absence of child support payments because the judge did not order Glenn to maintain the house and not to sell it. If Glenn sells or fails to maintain the house, the trial judge can deal with that then, as a changed condition, but the mere possibility of that happening does not keep the judge from considering the house and its costs as a factor in deciding whether to award child support now.

### 4. *Meeting MDS's Material and Financial Needs*

The judge's fourth reason was:

The parties have and will continue to see that all of [MDS's] material and financial needs are met.

We find it was proper for the trial court to consider MDS's needs in determining whether to deviate form the child support guide-

lines. *See* TEX. FAM.CODE ANN. § 154.123(b)(1), (2), (17) (Vernon 1996).

### 5. *Best Interests of MDS*

The judge's fifth reason was:

It is in the best interest of [MDS] to obligate both parties to support their child as set forth in the attached decree.

We find it was proper for the trial court to consider MDS's best interests.

*See* TEX. FAM.CODE ANN. § 154.123(b)(17) (1996).

We hold the judge did not abuse her discretion. We overrule point of error two.

### Mediation

██ In point of error three, Linda argues the trial judge had no authority to order mediation as a prerequisite to filing any future motion to modify. We agree.

The decree provides:

If in the event a dispute arises between LINDA DENNIS SMITH and GLENN WALTER SMITH concerning the conservatorship, periods of possession, and support of their child, either party may notify the other party in writing of the exact nature of the dispute and shall within seven days schedule a mediation session. The parties shall attend than [sic] three mediation sessions to see if they can resolve their differences. The party seeking mediation shall select a mediator who is a licensed psychologist and has received mediation training, and shall pay for the cost of mediation.

Mediation is a prerequisite to filing a Motion to Modify.

The Family Code provides: "On the written agreement of the parties or on the court's own motion, the court may refer *a suit* affecting the parent-child relationship to mediation." TEX. FAM.CODE ANN. § 153.0071 (Vernon 1996) (emphasis added). We conclude that the legislature intended that "suits," not "disputes," be subject to mandatory mediation.

██ The Family Code provides:

In rendering an order appointing joint managing conservators, the court shall:

. . . if feasible, *recommend* that the parties use an alternative dispute resolution method before requesting enforcement or modification of the terms and conditions of the joint conservatorship through litigation, except in an emergency.

TEX. FAM.CODE ANN. § 153.134(b)(5) (Vernon 1996) (emphasis added). The judge's order here is not a "recommendation." We hold the court erred by ordering mediation as a prerequisite to filing a motion to modify.

Accordingly, we sustain point of error three.

We reform the judgment by striking paragraph 11, entitled "Settlement of Future Disputes." As so reformed, the judgment is affirmed.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting

I dissent.

The majority affirms the decision of the trial court giving the day-to-day responsibility of raising the child to the mother, no child support to the mother, and all the control over the child's school and county of residence to the father. Linda Dennis Smith (Linda) has possession of MDS 62% of the time and Glenn Walter Smith (Glenn) has possession of him 38% of the time. Glenn pays no child support; instead he pays the mortgage on his own house.

In point of error two, Linda complains the trial court abused its discretion in not requiring the payment of periodic child support by Glenn.

The majority opinion correctly states the standards of review. However, in my opinion, the trial court incorrectly applied the factors to be considered under the standard of review.

The support order in this case does not conform to the guidelines set out in the Texas Family Code, and thus we cannot presume it is in the best interest of the child. TEX. FAM.CODE § 154.122(a). A court may order periodic child support payments in an amount which varies from the guidelines *only* if the evidence rebuts the presumption that application of the guidelines is in the best

interest of the child and justifies such a variance. TEX. FAM.CODE § 154.123(a). I do not believe it does.

The trial court listed five reasons as support for its decision to deviate from the child support guidelines in section 154.125. I challenge four of them.

### Amount of time of possession

The first reason the trial court cited as support for its decision not to award child support is that both parties were appointed joint managing conservators. This reason does not rebut the presumption that support according to the guidelines is in the best interest of the child. It fails in three respects. First,

> [t]he appointment of joint managing conservators does not impair or limit the authority of the court to order a joint managing conservator to pay child support to another joint managing conservator.

TEX. FAM.CODE § 153.137.

Second, although the trial court properly considered the amount of time of possession of MDS in accordance with section 154.123 of the FAMILY CODE, the trial court overstated the amount of time during which Glenn will have possession of MDS. Including holidays and vacations, Glenn was awarded slightly more time than the minimum amount of time awarded in the standard possession order for possessory conservators. That is, Glenn was awarded physical possession of MDS for approximately ten days each month, and the standard possession order calls for a minimum of six days plus eight evening hours each month. See TEX. FAM.CODE § 153.312. As to Christmas, Thanksgiving, MDS's birthday, and Father's Day, the decree is almost identical to the provisions in the Family Code for possessory conservators. See TEX. FAM. CODE § 153.314. Therefore, it cannot be said that Glenn spends "substantial time" with MDS.

Third, even if Linda and Glenn had an equal amount of time of possession (which they do not), under the child support guidelines in section 154.125 of the Family Code, Glenn would still be required to pay for child support. Glenn's monthly net resources are

$2,396.87, and Linda's monthly net resources are $1,917.39. Glenn's monthly child support obligation would be $479.37 (20% of $2,396.87), and Linda's monthly child support obligation would be $383.48 (20% of $1,917.39), for a difference in Linda's favor of $95.89. See TEX. FAM.CODE § 154.125(b).

### Maintaining Glenn's house

The third reason which the trial court cited as support for its decision not to award child support is that Glenn will maintain his house for MDS. This reason does not rebut the presumption that support according to the guidelines would be in the best interest of the child.

The trial court did not order Glenn to maintain the house for MDS and nothing prevents Glenn from selling it. Just because Glenn testified he might lose it if he had to pay child support is no justification for not ordering Glenn to pay child support.

The majority's opinion states that if Glenn sells the house or does not maintain it, the trial court can deal with it then. That hardly responds to Linda's point—Glenn should not be able to get credit against child support payment for his mortgage payment for his house.

Debt alone does not excuse a parent's obligation to pay child support. *See Cole v. Cole*, 882 S.W.2d 90, 94 (Tex.App.—Houston [14th Dist.] 1994, writ denied). By continuing payments on the house, Glenn is creating equity that will inure to his benefit; also, Glenn can sell the house and recapture the money he used to pay the mortgage. In the meantime, Linda will go without child support payments.

### MDS's material & financial needs

The fourth reason which the trial court cited as support for its decision not to award child support is that both Linda and Glenn will see that all of MDS's material and financial needs are met. This reason does not rebut the presumption that support according to the guidelines would be in the best interest of the child. The court's stated reason is merely a laudatory aspiration; it is no

justification to deny child support according to the guidelines.

### Best interest of MDS

The fifth reason which the trial court gave to support its decision not to award child support was that it was in the best interest of MDS to obligate both parents to support him. Again, this is a laudatory aspiration; it does not justify denying Linda child support. Both of these parents already have obligations to support MDS. This reason does not rebut the presumption that support according to the guidelines would be in the best interest of the child.

The majority merely states that "it was proper for the trial court to consider MDS's best interest." Linda does not dispute that the trial court must consider what is in MDS's best interest. She disputes whether this statement is itself a justification for denying her child support from Glenn.

In summary, Linda's resources are 20% lower than Glenn's and she has possession of MDS for 68% of the time. The trial court's findings and the record do not rebut the presumption that support according to the guidelines would be in the best interest of MDS.

I would reverse and remand to the trial court to reconsider the issues of rights and duties associated with joint conservatorship and child support.