TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00687-CV






Roger Alan Stevens, Appellant



v.



Sheryl Lee Stevens, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT


NO. B-98-0076-F, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING 







 The district court rendered a decree divorcing appellant Roger Alan Stevens and
appellee Sheryl Lee Stevens and appointing them joint managing conservators of their two sons. 
In her decree, the court designated Sheryl as the parent with the exclusive right to determine the
boys' primary residence. See Tex. Fam. Code Ann. § 153.134(b)(1) (West 1996). Roger
contends, in a single issue, that the court abused her discretion by conferring on Sheryl the right
to determine the children's primary residence. We will affirm the district court's decree.

 When it appoints joint managing conservators, a court must either establish the
county of the children's residence or designate the conservator who has the exclusive right to
determine the children's primary residence. Id. Roger argues that the court erred in designating
Sheryl rather than him as the conservator with this right. The court's paramount consideration
in determining which conservator should determine the children's residence is the best interest of
the children. Id. § 153.002 (West 1996); Dennis v. Smith, 962 S.W.2d 67, 68 (Tex.
App.--Houston [1st Dist.] 1997, pet. denied). In choosing the conservator who will determine
the children's residence, a fact-intensive decision, the court is invested with broad discretion. 
Dennis, 962 S.W.2d at 68; see Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). With
respect to the resolution of factual issues, the reviewing court cannot substitute its judgment for
that of the trial court. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). If the trial court
bases its decision on conflicting evidence, and some evidence supports the decision, the court does
not abuse its discretion. In re Barber, 982 S.W.2d 364, 366 (Tex. 1998); Davis v. Huey, 571
S.W.2d 859, 862 (Tex. 1978). In other words, to successfully challenge the district court's ruling
in this case, Roger must establish that the court could reasonably have reached but one decision. 
Walker, 827 S.W.2d at 840. Even if this Court would have decided the issue differently, we
cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. Id. 
We accordingly confine our review to the evidence supporting the district court's decision.

 Although the case was tried to the court, neither party requested the court to make
findings of fact, and none were made. See Tex. R. Civ. P. 296. On appeal, we presume that the
court found every fact necessary to support its decision that Sheryl should determine the boys'
residence, and we will uphold that determination on any legal theory supported by the record. 
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).

 The evidence shows that Roger and Sheryl married on March 18, 1993, and
separated on January 19, 1998. Two sons were born during the marriage. Between the time of
their separation and their divorce, Roger and Sheryl agreed on temporary orders, pursuant to
which each was named a temporary joint managing conservator; Sheryl was given the exclusive
right to establish the boys' legal residence and domicile as long as she resided with the boys in
Tom Green County. Since their separation, Sheryl has begun working as the manager of a car
rental agency in Midland; she works normal business hours during the week and earns an annual
salary of $23,500 plus a monthly commission. She has arranged for the boys to attend St. Luke's
Child Development Program in Midland while she works. Although Sheryl was attending school
and working two jobs for several years during the marriage, Sheryl testified that she and Roger
shared child-raising responsibilities. When they separated, Sheryl and the boys moved into her
sister's apartment. Because Roger had put the boys' beds in storage, Sheryl slept on the couch
while the boys slept in her bed. Several witnesses testified that Sheryl is a good mother, that she
has a good relationship with the boys, and that she is affectionate toward them. From these
witnesses' observations, Sheryl disciplines the boys appropriately; according to one friend, the
boys are well behaved when she sees them in public.

 The record contains evidence showing Roger to be temperamental. When Sheryl
told him that she was seeking a divorce, for instance, Roger drove to her place of work, yelled
vulgarities at her from the parking lot, threatened to beat her up, and dumped her clothes on the
roof and hood of her car. Their frequent arguments while married resulted at times in shoving
matches. Sheryl testified that many times Roger slapped her and called her names in the older
boy's presence, upsetting him and making him cry. Although Sheryl described Roger's
relationship with the boys as good most of the time, she stated that when he got angry at them, he
tended to yell. During some of these times, Roger would upset the older boy by calling him
derogatory names.

 Some evidence also exists that Roger does not always put the boys' interests before
his own. When Sheryl announced her intent to divorce Roger and the two separated, Roger moved
out of their apartment and put the boys' clothing, toys, and beds in storage. Although Sheryl had
none of these items, lacked the money to buy new ones, and asked Roger more than once to bring
her some of them, Roger brought her only a few clothes and toys for the boys. According to the
sister with whom Sheryl lived just after the separation, Sheryl did not have sufficient socks or
underwear for the boys even though there were plenty of clothes for them in storage. After the
agreed temporary orders were rendered, Roger divided the clothes, toys, and furniture except for
the boys' beds, which remained in storage. One evening shortly after they separated, Sheryl was
alone with the boys in an apartment when Roger arrived and began to bang on the door and yell
at her. As Sheryl opened the door, Roger continued yelling and calling her names, then took the
younger boy from the apartment. He could not take the other boy because Sheryl was holding
onto him. The boy was crying and saying that he didn't want to go. After the police came to the
apartment, Roger telephoned and continued to yell at her on the phone, telling Sheryl that he had
a violent temper.

 The evidence need not be compelling or conclusive to support the trial court's
exercise of discretion. While we have only a cold record from which to examine the proceedings,
the trial court is able to directly observe the actions and demeanor of the participants. We
therefore accord the trial court great latitude in judging credibility and concern for the boys' best
interests. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The admitted
conflicts in the evidence here must be resolved by the trial court, who may choose to believe one
witness and disbelieve others. Id. We cannot substitute our judgment for that of the trial court
simply because other evidence would support a different conclusion. Barber, 982 S.W.2d at 366;
Walker, 827 S.W.2d at 840.

 Our review of the record shows that sufficient evidence exists to support the district
court's decision that Sheryl should determine the boys' primary residence. We therefore overrule
Roger's issue and affirm the court's decree.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 26, 1999

Do Not Publish



 on January 19, 1998. Two sons were born during the marriage. Between the time of
their separation and their divorce, Roger and Sheryl agreed on temporary orders, pursuant to
which each was named a temporary joint managing conservator; Sheryl was given the exclusive
right to establish the boys' legal residence and domicile as long as she resided with the boys in
Tom Green County. Since their separation, Sheryl has begun working as the manager of a car
rental agency in Midland; she works normal business hours during the week and earns an annual
salary of $23,500 plus a monthly commission. She has arranged for the boys to attend St. Luke's
Child Development Program