TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00298-CV







Louis Numa Decuir, III, Appellant




v.




Sue Ann Decuir, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-14269, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Louis Numa Decuir, III challenges the provisions in a divorce decree governing child
custody and support. He contends that the court should have modified the standard visitation order
further to grant him more time with the children. He also challenges the requirement that he pay
$844.38 monthly in child support. He contends the provisions of the decree governing these issues
are not supported by legally and factually sufficient evidence. We will affirm the judgment.

 The parties are the parents of two daughters, aged seven and eleven at the time of
trial. The parties married in 1980, separated in April 1996, filed for divorce in November 1996 (but
did not actively pursue the divorce from 1997 to 1999), and divorced in February 2000.

 The parties worked together informally regarding custody and support before reaching
a more formal agreement in November 1999; although intended as temporary orders, the agreement
apparently was never filed with or signed by the court. Louis testified that the parents adjusted for
the needs of their schedules and their children's schedules. He said he took the girls more often
sometimes to help Sue when she needed to study or, later, when she needed to prepare for school
during her first year of teaching. Louis felt that they shared the parenting duties equally during this
time. The November 1999 agreement specified that Louis would pay $700 per month to Sue and
would have possession of the girls pursuant to the standard possession order with certain
modifications. He would have the girls on Thursdays instead of Wednesdays, could shift weekends
to accommodate his military reserve duty obligations, and would have possession on some Mondays
and Tuesdays following a weekend when Sue had possession of the girls. Louis testified that
subsequent drafts limited his post-weekend possession to Mondays and excluded summer weekends
from this modification. Holiday possession followed the standard possession order. Louis testified
that the parties initially had some disagreements over the interpretation of the agreement--for
example, which weekend was the first weekend of the month. During the separation, Louis testified
that he paid approximately $19,000 in support for Sue and the children.

 Louis was active in their daughters' lives. He coached them in soccer and served as
an officer in their soccer association. He arranged and took them to ballet lessons. He hosted
sleepovers for them and their friends, had birthday parties, assisted with Girl Scout activities, and
took them on various outings, events, and vacations.

 In the final decree, the court appointed the parents joint managing conservators and
determined that the children's primary residence must be in Travis or Williamson counties. The
court gave Sue the right to establish the children's primary residence within Travis or Williamson
counties and to receive monthly child-support payments of $844.38. The court rendered a standard
possession order with some modifications that are similar to the parties' practices during the
separation. One modification of the standard visitation order allows Louis to substitute an even-numbered weekend possession if his military reserve activities occur on an odd-numbered weekend
during which he was entitled to possession. His weekday possession during the school year runs
from Thursday at 6 p.m. until Friday morning at school rather than the standard Wednesday 6-8 p.m. 
The court orally and in the decree reminded the parties that they could by agreement depart from the
terms of the final decree.

 Louis contends that no evidence or insufficient evidence supports the district court's
conclusion regarding the amount of access and possession of the children he should have. He
contends he should have almost equal time with the children. We review the district court's
determination of conservatorship under an abuse of discretion standard. Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982); Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no
pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or
when it acts without reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d
223, 226 (Tex. 1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds
of error, but are relevant factors in assessing whether the trial court abused its discretion. Doyle, 955
S.W.2d at 479. In custody matters, where personal observation and evaluation of the parties and
their claims is so valuable, we give great deference to the trial court's judgment. Id. at 481-82.

 The legislature has established certain presumptions by statute. The best interest of
the children is the primary consideration in determining conservatorship and access. Tex. Fam. Code
Ann. § 153.002 (West 1996). "Joint managing conservatorship does not require the award of equal
or nearly equal periods of physical possession of and access to the child to each of the joint
conservators." Id. § 153.135. "The standard possession order . . . constitutes a presumptive
minimum amount of time for possession of a child by a parent named as a joint managing
conservator who is not awarded the primary physical residence of the child in a suit." Id. § 153.137. 
There is a rebuttable presumption that the standard visitation order provides reasonable minimum
possession of a child for a parent named a joint managing conservator and that such possession is
in the best interest of the child. Id. § 153.252.

 Louis complains that the court's order "deprived the children of a pre-existing,
beneficial shared custody agreement." The testimony of both parents was that their recent
litigiousness disrupted the flexible scheduling they had employed before November 1999. The court,
while imposing the decree, reminded the parents that they were free to agree to depart from the terms
of the decree. Though the decree's elimination of Louis's Monday possession after Sue's weekends
reduces the required visitation from that granted by the November 1999 informal agreement, it
requires more visitation than the standard order would. Further, there was evidence to support the
reduction. Sue cast doubt on whether the Monday visits were in their daughters best interest when
she testified that she was not sure that the girls were happy with those visits. Recognizing, however,
that the girls were accustomed to and benefitting from Louis's greater involvement, the decree
entitles Louis to keep them overnight Thursday instead of seeing him for only two hours on
Wednesday evening. The decree does not approach the extreme restrictions on visitation criticized
in some of the cases Louis cites. See Roosth v. Roosth, 889 S.W.2d 445, 451 (Tex. App.--Houston
[14th Dist.] 1994, writ denied) (reversing decree giving mother absolute discretion as to when
children could visit father); Guy v. Stubberfield, 666 S.W.2d 176, 178 (Tex. App.--Dallas 1983, no
writ) (breach of agreement to split possession equally by totally barring access to child is some
evidence of changed circumstances and harm to child). We find sufficient evidentiary support for
the balance the trial court struck in modifying the standard order.

 Similarly, we find no basis for reversal in Louis's complaint regarding the court's
designation of Sue as the parent who determines where the children live and attend school. The
Family Code provides as follows:


In rendering an order appointing joint managing conservators, the court shall: 


(1) designate the conservator who has the exclusive right to determine the primary
residence of the child and:


 (A) establish, until modified by further order, a geographic area consisting
of the county in which the child is to reside and any contiguous county
thereto within which the conservator shall maintain the child's primary
residence; or


 (B) specify that the conservator may determine the child's primary
residence without regard to geographic location.



Tex. Fam. Code Ann. § 153.134(b) (West Supp. 2001). The decree implements subsection (1)(A)
by permitting Sue to establish the girls' residence within Williamson or Travis counties. Evidence
supports the conclusion that the court did not abuse its discretion in finding this arrangement to be
in the childrens' best interest. The girls lived primarily with Sue for most of the separation period;
Louis does not claim to have provided their primary residence. Sue said she chose the location of
her new house so the girls could remain in the schools they had attended by virtue of approved
transfers. There is no evidence that allowing Sue to choose the girls' residence is not in their best
interest. We resolve issues one and two in favor of the judgment.

 Louis next contends that no evidence or insufficient evidence supports the district
court's conclusion that he should pay $844.38 in monthly child support. A court's order of child
support will not be disturbed on appeal unless the complaining party can show a clear abuse of
discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).

 The court's award follows the statutory guidelines. The court's unchallenged finding
of fact is that Louis has monthly net resources of $3377.55 and Sue has monthly net resources of
$2003.58. The child-support guidelines require the obligor parent of two children who has less than
$6000 in monthly net resources to provide twenty-five percent of the net resources as child support
to the obligee parent. Tex. Fam. Code Ann. § 154.125(b) (West 1996). Twenty-five percent of
$3377.55 is $844.3875. The court ordered Louis to pay $844.38 monthly. This amount is rebuttably
presumed to be in the children's best interest. See id. § 154.122.

 Louis complains that the award is not justified and requests reformation of the decree. 
He complains that 

 the trial court invited appellant to quit serving in the Reserves, sell his home and re-approach the court for a reduction in child support. Dispossessing the children of a
home and depriving our military of an educated and distinguished Reservist is
outrageous, contravenes public policy and cannot be in the children's best interest. 



We disagree with this characterization of the court's statements. Regarding the reserves, Louis
introduced evidence that, before the divorce hearing, he requested retirement from the reserves to
"eliminate potential conflicts with [his] family and child-raising responsibilities." Because
retirement without pay would reduce his income and thus his net resources, he could request a
recalculation of his child-support obligation to account for these changed circumstances. See Tex.
Fam. Code Ann. § 156.401(a)(1) (West Supp. 2001). The court did not invite Louis to quit serving
his country, but recognized his expressed intention to retire. Regarding the house, the court stated,
"He says, well, I can't afford this house. Well, in fact, if you run the numbers, he can afford the
house. And if he decides he can't afford the house, then he can simply find a house in Pflugerville
that he can afford." The court's expression of belief that Louis can afford the house is hardly
advocacy for dispossessing the children of a home.

 Louis compares this case to Dennis v. Smith, a case in which the court ordered no
child support payments. See 962 S.W.2d 67, 72 (Tex. App.--Houston [1st Dist.] 1997, pet. denied). 
Initially, we note that a holding that a district court did not abuse its discretion by failing to order
child support is not equivalent to holding that the same district court in the same case would have
abused its discretion by ordering child support; the abuse of discretion standard can allow for a wide
range of decisions based on the same facts. See Buller, 806 S.W.2d at 226. In Dennis, the appellate
court approved the district court's decision based on five factors: (1) the parties' status as joint
managing conservators each spending substantial time with the child, (2) the parties' success in not
applying statutory child support, (3) the husband's obligation to pay for the child's existing home
without assistance from the mother, (4) the parties' obligations to meet the child's financial needs,
and (5) the best interests of the child. Dennis, 962 S.W.2d at 73-74. Though the first, fourth, and
fifth factors are present here, the second and third are not. Indeed, Louis testified that he had paid
some $19,000 in support and had agreed to pay $700 monthly in late 1999. Unlike the father in
Dennis, who was solely maintaining payments on the house that the parents had owned jointly,
Louis's house payments are on a home he purchased long after the separation began. The holding
that the Dennis court did not abuse its discretion in awarding no child support does not require that
we find that the district court here abused its discretion by awarding child support.

 The parties' comparative net monthly resources, responsibilities, and realized
inheritances do not mandate reversal. Louis's transferring $844.38 monthly to Sue leaves Louis with
$2533.17 monthly and Sue with $2847.96 monthly; after the transfer, Sue has fifty-three percent of
the parents' combined net monthly resources though she possesses the girls for at least sixty percent
of the time. Sue's inheritance from her deceased family members is not properly part of the
equation; even were Louis and Sue still married, the inheritance would be Sue's separate property. 
See Tex. Fam. Code Ann. § 3.001(2) (West 1998). The law does not require that, because they are
divorced, Sue use her inheritance to reduce Louis's obligation to support his children.

 Sufficient evidence supports the court's decision. Because Louis did not rebut the
presumption that the guidelines amount was in the best interest of the children, we find no abuse of
discretion. We resolve issues three and four in favor of the judgment.

 We affirm the judgment.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: June 14, 2001

Do Not Publish



e children's best interest. 



We disagree with this characterization of the court's statements. Regarding the reserves, Louis
introduced evidence that, before the divorce hearing, he requested retirement from the reserves to
"eliminate potential conflicts with [his] family and child-raising responsibilities." Because
retirement without pay would reduce his income and thus his net resources, he could request a
recalculation of his child-support obligation to account for these changed circumstances. See Tex.
Fam. Code Ann. § 156.401(a)(1) (West Supp. 2001). The court did not invite Louis to quit serving
his country, but recognized his expressed intention to retire. Regarding the house, the court stated,
"He says, well, I can't afford this house. Well, in fact, if you run the numbers, he can afford the
house. And if he decides he can't afford the house, then he can simply find a house in Pflugerville
that he can afford." The court's expression of belief that Louis can afford the house is hardly
advocacy for dispossessing the children of a home.

 Louis compares this case to Dennis v. Smith, a case in w