**REVERSE and REMAND; and Opinion Filed June 7, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00266-CV**

**LEANN R. FITCH, Appellant**
**V.**
**CARL W. FITCH, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-55137-06**

**MEMORANDUM OPINION**

Before Justices FitzGerald, Murphy, and Lewis
Opinion by Justice Murphy

Leann R. Fitch appeals the final order in the post-divorce modification proceeding initiated by her former husband, Carl W. Fitch. She argues the district court abused its discretion by enjoining her from claiming the federal income tax dependency exemptions and terminating Mr. Fitch's child support obligations. We conclude federal law preempts the state court's exercise of power over the income tax exemptions and the record contains no probative evidence supporting the trial court's conclusion it was in the best interest of the children to terminate Mr. Fitch's child support obligations. We reverse and remand.

**BACKGROUND**

The Fitches divorced in 2007. The agreed final divorce decree named them joint managing conservators of their four children, required Mr. Fitch to pay monthly child support of $2,100, outlined the division of the marital residence, and provided for spousal support for a

period of six months following disposition of the residence. As part of the property division, the Fitches were required to continue to list the residence with a licensed real estate broker and sell the house for a "mutually agreeable" price. Absent agreement, the court would appoint a receiver. The divorce decree also provided that Mr. Fitch would continue making all payments of principal, interest, and insurance until the house was sold and Ms. Fitch could live there until closing. The Fitches never listed the residence for sale, and the house never sold. Ms. Fitch remained in the home during the four years following the divorce.

During those four years, Mr. Fitch paid $44,875.58 in mortgage and insurance payments. He also paid homeowner's association dues, real property taxes, various utilities, and Ms. Fitch's car payments and related insurance. These additional payments totaled $45,582.19.

Mr. Fitch petitioned the court for appointment of a receiver in December 2010 and amended his petition a few months later seeking additional orders. Those requests included reimbursement for amounts exceeding the divorce decree obligations, discharge of spousal maintenance, increased possession and access to the children, decreased or abated child support, credit against future child support for mortgage and other payments, and incentives for Ms. Fitch to allow Mr. Fitch the federal income tax exemptions for the children. In February 2011, the trial court signed an agreed order abating child support and appointing a receiver to sell the residence. Regarding child support, the order included the following handwritten notation:

> It is Ordered that all child support is abated immediately. Petitioner is Ordered to provide notice of employment w/i[n] 48 business hours of accepting a job. Said notice shall include salary and benefit information. A status hearing is set for March 24, 2011 at 9:00 a.m. concerning child support.

The Fitches signed the order acknowledging their agreement with its terms.

The trial court conducted a bench trial on Mr. Fitch's pending petition and motions in September 2011 and rendered a final order in December. The final order required Ms. Fitch to sign IRS tax forms and enjoined her from claiming two of her children as dependents for federal

–2–

income tax purposes. The court also appointed a new receiver to handle selling the house and relieved Mr. Fitch of his obligations for spousal maintenance, mortgage payments, and any other expenses relating to the residence. The court also continued the abatement of Mr. Fitch's child support obligations. This appeal followed.

## DISCUSSION

In three issues, Ms. Fitch argues the trial court erred by ordering her to surrender the federal income tax exemptions, altering the terms of the divorce decree by shifting responsibility for the mortgage payments to Ms. Fitch and appointing a receiver to sell the house, and terminating Mr. Fitch's child support obligations. Ms. Fitch also requested remand for reconsideration of attorney's fees in the event this Court granted her any relief. Shortly before submission, the Fitches sold the marital residence. The parties agree the sale renders Ms. Fitch's second issue moot. Accordingly, we do not address the arguments regarding appointment of a receiver and redistribution of obligations regarding the residence.

### The Award of Federal Income Tax Exemptions

Ms. Finch contends in her first issue that the trial court abused its discretion by awarding the federal income tax dependency exemptions to Mr. Fitch. The test for determining an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Stated differently, a trial court abuses its discretion if its decision is arbitrary and unreasonable. *Id.* at 242. A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Income tax exemption is an area of federal law that has preempted state law and must be determined according to applicable federal statutes. *In re S.L.M.*, 293 S.W.3d 374, 375 (Tex. App.—Dallas 2009, no pet.). The trial court may not take away a person's entitlement to a

–3–

federal tax exemption. *Id.* Specifically, state courts have no power to interfere in this area. *In Interest of J.G.Z.*, 963 S.W.2d 144, 150 (Tex. App.—Texarkana 1998, no pet.).

Mr. Fitch concedes that, given the facts presented, the district court lacked authority to award him the tax exemption for the children. Because the trial court had no discretion in determining what the law is or applying the law to the facts, we sustain the first issue. *Walker*, 827 S.W.2d at 840.

### The Abatement of Child Support

Ms. Fitch contends in her third issue that the trial court abused its discretion by terminating Mr. Fitch's child support obligations. We also review a trial court's ruling on a request to modify child support for an abuse of discretion. *In re H.J.W.*, 302 S.W.3d 511, 513 (Tex. App.—Dallas 2009, no pet.). Under this standard described above, legal and factual sufficiency are not independent grounds of error, but are factors in assessing whether the trial court abused its discretion. *In re C.H.C.*, 392 S.W.3d 347, 349 (Tex. App.—Dallas 2013, no pet.). Abuse of discretion does not exist as long as there is some evidence of a substantive and probative character to support the decision. *Id.*

Here, the trial court made findings of fact and conclusions of law. Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict. *Id.* (citing *Baker v. Baker*, 719 S.W 2d 672, 674 (Tex. App.—Fort Worth 1986, no writ). Those findings of fact are reviewable for factual and legal sufficiency of the evidence by the same standards as applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers. *Id.* Stated differently, a trial court's findings are not determinative unless they are supported by the record.

To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence

upon which to exercise its discretion, and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We conduct the applicable sufficiency review regarding the first question (did the trial court have sufficient evidence upon which to exercise its discretion). *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 867 (Tex. App.—Dallas 2011, no pet.). We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.*

Ms. Fitch makes two arguments regarding the trial court's abuse of discretion. First, she asserts that Mr. Fitch was not entitled to any credit, offset, or accommodation regarding the mortgage and insurance payments. She also contends the order "cannot possibly be in the best interest of the four children."

The Texas Family Code contains child support guidelines, and an order conforming to the guidelines is presumed to be reasonable and in the best interest of the child. *See* TEX. FAM. CODE ANN. § 154.122 (West 2008). A court may vary from the guidelines in circumstances where the court determines it would be unjust or inappropriate to adhere to them. *Id.* For example, the court may award child support payments in a different amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines. *Id.* § 154.123(a); *Dennis v. Smith*, 962 S.W.2d 67, 72 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("The presumption is rebuttable by evidence that shows a variance is in the child's best interests.").

The parties do not dispute the trial court's disregard of the guidelines in terminating Mr. Fitch's child support obligations. In its conclusions of law, the court determined "the abatement/termination of child support is in the best interests of the children and is just and appropriate under the circumstances." The court made no findings of fact regarding the best

interests of the children but stated under its conclusions that it considered "various factors in deciding to award child support that varies from the guidelines," including:

> (1) "the age and needs of the child;" (2) "the ability of the parents to contribute to the support of the child;" (3) "the amount of time of possession of and access to a child;" (4) "the amount of alimony or spousal maintenance actually and currently being paid or received by a party;" (5) "whether the obligor or oblige[e] has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity; (6) provision for health care insurance and payment of uninsured medical expenses;" (7) "debts or debt service assumed by either party;" and (8) "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents." Tex[.] Fam. Code §154.123(b).

As cited by the court in its conclusions, the family code provides a list of factors the court shall consider in determining whether application of the guidelines would be unjust or inappropriate. *See* TEX. FAM. CODE ANN. § 154.123(b). The best interest of the child is always the court's "paramount guiding principle" in making child support decisions. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011) (quoting *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 418 n.3 (Tex. 1993)).

Ms. Fitch emphasizes in her issue regarding permanent abatement of Mr. Fitch's child support obligations that the youngest of the children "is only eight years old" and argues the "only effect of the district court's order is to deprive four children of their father's financial support—three of them for a lengthy period." Mr. Fitch responds that the sums paid for mortgage and insurance payments were in support of the children and a permanent abatement is all the trial court could have ordered.

Both parties assume the trial court abated child support to offset the approximately $90,000 paid by Mr. Fitch. Mr. Fitch argues the trial court made findings that the payments comprising this amount "were made in support of the children." His reference to the record is "Exhibit B" to the final order, which is a federal tax form for release of an exemption.

The trial court's order and findings regarding termination of child support are unclear regarding the court's reasoning for terminating child support. In its final order, the trial court states under "Findings" that Mr. Fitch's "requested modification is in the best interest of the children." Under the heading "Best Interest of the Children" in that same order, the court found that the terms of possession should remain unchanged from the divorce decree and that each parent must establish an online account for purposes of communicating regarding "any substantive event or information."

The court's findings of fact filed separately addressed support as follows:

> 11. From the evidence provided and the arguments made, the Court found that due to [Ms. Fitch's] failure to continue to list and, thus to sell, the Marital Property, [Mr. Fitch] was forced to continue to pay the principal and interest due on the marital Property. Between the date of divorce and February, 2011, evidence showed that [Mr. Fitch] paid over $36,000.00 towards the mortgage due on the marital Property and $8,000.00 towards insurance for the marital Property, for a total cost to [Mr. Fitch] of $44,875.58. These funds were paid in support of both [Ms. Fitch] and the children the basis of this suit.

> 12. From the evidence provided and the arguments made, the Court also found that [Mr. Fitch] also continued to make numerous other payments towards expenses incurred by [Ms. Fitch], for her and the children, including but not limited to: insurance on the marital Property; HOA dues for the Martial [sic] Property; car payments and car insurance for [Ms. Fitch's] personal vehicle; and utilities due on the Marital Property. These expenses totaled approximately $45,582.19. These funds were paid in support of both [Ms. Fitch] and the children the basis of this suit. The Court also finds that [Mr. Fitch] was current on all child support payments at the time of trial.

The trial court ended its findings of fact with the statement that its order was "in the best interest of the children."

It appears from these findings that the trial court determined the approximately $90,000 was paid in support of both Ms. Fitch and the children. In its conclusions of law, the court determined that Ms. Fitch failed to abide by the orders of the divorce decree and breached the agreement to sell the marital property and the damages to Mr. Fitch were "in excess of $40,000.00." The trial court also concluded, as a result of Ms. Fitch's breach of contract, Mr.

–7–

Fitch was relieved of his obligations to continue making mortgage and insurance payments on the marital property and was relieved of his obligation to provide spousal support. Nowhere, however, does the trial court make fact findings supporting a conclusion that no child support is in the best interests of the children; nor does the court state that child support was terminated because Mr. Fitch prepaid child support or intended the payments to be in lieu of child support.

Because there are no findings of fact regarding the factors considered by the trial court in terminating child support, our analysis of the evidence is based solely on our review of the record. In that analysis, we must consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether, based on the decision to terminate child support, the trial court erred in exercising its discretion. *In re A.B.P.*, 291 S.W.3d at 95. We address that record in the context of the bases cited in the court's conclusions, because our review is limited to the grounds specified by the trial court in its justification for varying from the child support guidelines. *See In re S.A.D.*, No. 05-02-01213-CV, 2003 WL 21378256, at *2 (Tex. App.—Dallas June 16, 2003, no pet.) (mem. op.)).

The trial court identified eight statutory factors it considered. The first stated factor was "the age[s] and needs of the child[ren]." TEX. FAM. CODE ANN. § 154.123(b)(1). The children's ages were part of the record. Based on their ages at the time of the order, the youngest would not graduate from high school for nearly a decade. Two of the children, twins, were only ten years old at the time. Thus, three of the children were not near the age where child support obligations cease. Importantly, the record contains no probative evidence regarding the children's needs that would support a variance to the level of terminating child support. *See Panozzo v. Panozzo*, No. 13-96-241-CV, 1997 WL 33760707, at *2 (Tex. App.—Corpus Christi Dec. 11, 1997, no pet.) (concluding evidence insufficient regarding greater needs of children to justify variance from the guidelines).

In addition to the ages of the children, the evidence indicated the children had asked Mr. Fitch for money for after-school activities. Additionally, one of the children had dyslexia and another had a speech problem. The record is silent regarding costs of treating these conditions and whether any expenses associated with those needs could or would be addressed by insurance. The only evidence regarding the ages and needs of the children tended to support, at the least, following the guidelines for child support. *See id.* (determining trial court abused discretion in deviating from guidelines where no evidence of amounts incurred because of the children, housing, clothing, education, transportation, medical, food, or general maintenance).

The second factor listed by the trial court was "the ability of the parents to contribute to the support of the child." *See* TEX. FAM. CODE ANN. § 154.123(b)(2). The record indicates some disparity in the parents' incomes, but not one that would tend to support terminating child support. Mr. Fitch made $80,000 a year in base salary plus additional commissions of a little over $2,000 a month; conversely, Ms. Fitch made $32,000 a year. This evidence does not suggest terminating child support would be in the best interest of the children. *See id.* § 154.123(a); *Dennis*, 962 S.W.2d at 72.

The third factor was "the amount of time of possession of and access to a child." *See* TEX. FAM. CODE ANN. § 154.123(b)(4). The divorce decree awarded possession and access to the children in accordance with the "expanded standard possession order." The final order did not modify these provisions; they remained the same. Accordingly, this part of the record does not support a variance from the child support guidelines. *See In re S.A.D.*, 2003 WL 21378256, at *2 ("A standard possession order neither suffices to make the child support guidelines unjust or inappropriate nor justifies the trial court's reducing the guideline's predetermined child support amount.").

The sixth factor identified by the trial court in its conclusions was the "provision for health care insurance and payment of uninsured medical expenses." *See* TEX. FAM. CODE ANN. § 154.123(b)(12). Mr. Fitch paid approximately $105 a month to cover the children's medical insurance. No modifications or changes were suggested regarding this obligation, and the record is silent regarding any evidence that would support the variance ordered by the trial court.

The trial court referenced three additional factors, which we address together: "the amount of alimony or spousal maintenance actually and currently being paid or received by a party" (fourth factor); "whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity" (fifth factor); and "debts or debt service assumed by either party" (seventh factor). *See id.* §§ 154.123(b)(8), (b)(10), (b)(16). Mr. Fitch paid the mortgage and insurance payments, homeowner's association dues, and property taxes; he also paid life insurance payments, various utilities and "other" expenses, and car payments (including insurance); additionally, the final divorce decree required Mr. Fitch to pay spousal support.

The evidence shows that, while Mr. Fitch did previously pay these sums, the final order abating child support also relieved him of future spousal support, mortgage payments, and "any other expenses incurred" on the property. All costs necessary for the maintenance and repair of the marital residence were transferred to Ms. Fitch. By the time of submission, those costs would have ceased based on sale of the residence. The evidence also showed that Mr. Fitch stopped making payments on the life insurance policy; the utilities; and the car, which was repossessed after Mr. Fitch stopped making payments in June 2010.

These past additional payments caused by retention of the residence for four years could support the trial court's variance from the guidelines. Notably, all of the payments and the bases for the payments were eliminated by the final order. Additionally, the trial court made no fact

findings regarding how these prior payments that were based in part on the parties' property division could override any child support completely for children who would not reach majority for another eight to ten years.

Finally, the trial court also referenced "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents" as the basis for its conclusion a variance from the guidelines was justified. *See id.* § 154.123(b)(17). Mr. Fitch offers no evidentiary basis for any of the factors, other than to cite Ms. Fitch's testimony that she agreed the additional expenses paid were for her and the children. Other than the evidence described above, which we reference from our independent review of the record, no evidentiary basis supports the variance that terminated child support.

Although both parties assume the trial court's order terminating child support payments was an offset for the prior payments, the record is not clear. To the extent this was the trial court's purpose, however, both parties agree that the relevant inquiry is whether Mr. Fitch made the prior payments with the intent that he receive an offset against future child support obligations. *See Bolton v. Bolton*, No. 01-10-00193-CV, 2011 WL 286166, at *6 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) ("The express intent of the obligor as of the time he made the payment is controlling over whether the excess is to be treated as credit or not."); *In re B.S.H.*, 308 S.W.3d 76, 79 (Tex. App.—Fort Worth 2009, no pet.) ("[W]here an individual obligee receives from an obligor . . . child support payment that exceeds the court-ordered amount, the trial court shall give effect to any expressed intent of the obligor to determine the proper application of the amount that exceeds the court-ordered amount."). The record contains no evidence that Mr. Fitch intended to receive a credit at the time the payments were made. It is silent in that regard, as is the trial court's order.

Even assuming the trial court were allowed to offset the referenced payments (approximately $90,000 over four years) against future child support, the evidence described above is not of a substantive and probative character sufficient to support the trial court's decision to vary from the child support guidelines to the extent of terminating the obligation altogether. Under the divorce decree, Mr. Fitch was paying $2,100 per month in child support. Absent modification, that amount would have continued for eight years for two children and ten years for one child. Of the factors cited by the court as justifying a variance, only four provided any support for some variance—the provision for health insurance, spouse maintenance paid, payments for housing and automobile expenses, and debt service. Other than health insurance, each of those obligations was eliminated by the order and some were eliminated prior to trial.

Mr. Fitch argues the $90,000 should be treated as prepaid child support; but no evidence exists that prepaid child support, or credit, was his intention at the time he made the payments. Nor does the evidence support a conclusion completely overriding the presumption the child support guidelines are in the best interest of the children. That is, while some variance may have been justified based on the evidence, there is no evidence of probative value supporting complete elimination of child support for the Fitches' young children.

In short, while the trial court listed statutory factors to consider when diverging from the statutory child support guidelines, the trial court did not provide fact findings that supported the variance would be in the best interest of the children. Importantly, the record also contains no evidence supporting the final determination to eliminate child support payments completely. As a result, the trial court abused its discretion by abating those payments. We sustain Ms. Fitch's third issue.

For the foregoing reasons, we reverse the trial court's final order and remand the case for further proceedings consistent with this opinion.

/Mary Murphy/
MARY MURPHY
JUSTICE

120266F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LEANN R. FITCH, Appellant

No. 05-12-00266-CV     V.

CARL W. FITCH, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-55137-06.
Opinion delivered by Justice Murphy.
Justices FitzGerald and Lewis participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

     It is **ORDERED** that appellant LEANN R. FITCH recover her costs of this appeal from appellee CARL W. FITCH.


Judgment entered this 7th day of June, 2013.


/Mary Murphy/

MARY MURPHY
JUSTICE