# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-04-00311-CV

---

**In the Interest of J. R. D. and T. C. D.**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. FM002362, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## CONCURRING OPINION

The majority apparently affirms the district court's decision that Duck failed to show "changed circumstances" so as to justify modification of the order.[1]  Because I agree that the court did not err in its decision in that regard, I concur in the result reached by the majority.  However, I write separately to express my belief that the standards currently used in making and reviewing orders that have the effect of limiting a parent's access to his or her children do not reflect the legislative mandate regarding parental access, nor do they adequately respect the scope of the liberty interest enjoyed by a parent in rearing his or her own children.

Because of the gravity of the constitutional rights and interests at stake in such proceedings, and because the current standard is based upon outdated notions of parenting that

---

[1] Interestingly, despite the trial court's express finding that there were no changed circumstances justifying a modification in the order, the court granted Duck's request for modification of the possession order concerning Thursday nights.  As Williamson does not appeal the grant of overnight possession on Thursdays, the majority opinion does not address this apparent inconsistency.

predate the family code and run counter to the legislature's stated policy concerning children's best interests, trial courts should justify deviation from maximum feasible time with both parents by clear and convincing evidence and make factual findings, and appellate courts should carefully review those findings.

The custody issue entertained by the court in this case is one faced by trial courts countless times every day. Yet, while the liberty interest at issue is "perhaps the oldest of the fundamental interests recognized," *Troxel v. Granville*, 530 U.S. 57, 65 (2000), the standards by which the trial courts decide and consequently, by which appellate courts review these decisions offer minimal recognition of the gravity of the liberty interests parents and children hold in their relationships and little protection to the individuals involved. Our trial courts operate under a preponderance of the evidence standard in these cases and appellate courts apply an abuse of discretion standard in reviewing those decisions. Thus, even against the background of these monumental rights and explicit legislative directives to limit a parent's time with a child *only* as necessary, *see* Tex. Fam. Code Ann. § 153.193 (West 2002), a trial court, if it were ever so slightly more persuaded in one direction than another, may make a decision profoundly affecting the rights and abilities of parents to raise their children, and unless we can say that no reasonable mind could have reached the court's conclusion, we leave it undisturbed. A parent's interest in the companionship, care, custody, and management of his or her children is paramount and demands a respect much greater than that due the liberties derived from mere "shifting economic arrangements." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). However, in practice, issues of shifting economic arrangements often receive more protection. For instance, in a divorce, a party seeking to overcome

the community property presumption must prove an item is separate property by the higher standard of clear and convincing evidence. Tex. Fam. Code Ann. § 3.003 (West 1998). Clear and convincing evidence is that measure or degree of proof that produces in the mind of a fact-finder a firm belief or conviction of the truth of the matter sought to be established. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Limitations on parental access to children, however, need not be supported by evidence upon which the fact-finder could form a firm belief or conviction. This standard is totally at odds with both the fundamental nature of the constitutional rights at issue and the legislature's stated policy and mandate.

**Interests of parents and children and the State**

The right to the companionship, care, custody, and control of one's own child is a fundamental liberty interest far more precious than any property right. *In re M.S.*, 115 S.W.3d 534, 547-48 (Tex. 2003) (citing *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982)). Thus, "the relationship between parent and child is constitutionally protected." *Troxel*, 530 U.S. at 66 (citing *Quillion v. Walcott*, 434 U.S. 246, 255 (1978)). Parents have the responsibility and the right to direct the upbringing and education of their children. *Id*. at 65 (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925)). In fact, it is "cardinal" that the custody, care, and nurture of a child reside in the parents. *Id*. at 65 (citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). It has been firmly established that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental rights of parents to make decisions concerning the care, custody, and control of their children. *Id.* at 66. "[T]he Due Process Clause does not permit States

3

to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id*. at 72-73.

Children also have a substantial interest in the proceedings that determine their custody and the direction of their lives. *See M.S.*, 115 S.W.3d at 547. Both parent and child have a weighty interest in the accuracy and justice of a decision affecting their ability to have a relationship with one another. *Id*. (recognizing this substantial interest in context of termination of parental rights). The State also has an interest in protecting the welfare of its children, which "must initially manifest itself by working toward *preserving* the familial bond" between a parent and child unless that parent will not provide a safe, stable environment. *Id.* at 548.

While the grant of custody to another or the limitation of a parent's access to a child is not tantamount to absolute termination of parental rights, the State must tread very carefully when it infringes upon a parent's ability to participate in child rearing. *See Troxel*, 530 U.S. at 72-73. Even when it does not terminate rights, a court that trenches on a parent's ability to rear his or her children may also violate the United States Constitution. *Id*. at 67. Also, the Texas Supreme Court has recognized that custody determinations as between fit parents can risk a significant deprivation similar to termination of the relationship. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 168 n.8 (Tex. 1990) ("[w]hile this may not . . . technically be a termination of parental rights action, it may have such an effect"; where mother without adequate transportation lives some distance from son, existence of visitation rights is likely to be insufficient to allow her "to have a substantial role in her child's upbringing"). The weighty interests of parents, children, and the State in a just and accurate decision mandate that "*any* significant risk of erroneous deprivation is unacceptable." *M.S.*, 115

4

S.W.3d at 549 (emphasis added).  Our government respects fit parents' abilities to act in the best interests of their children by applying a presumption that they do so.  *Troxel*, 530 U.S. at 68.  The United States Supreme Court has recognized that, in accord with this presumption, so long as a parent is "fit," there is normally no reason for the State to inject itself between parent and child or disturb that parent's rearing of his or her children.  *Id*. at 68-69.  In other words, court interference with the right of a fit parent to bring up his or her own child impacts a fundamental right and may violate the Due Process Clause.

**The family code**

The family code's statutory scheme focuses on the children's welfare and best interests.  Tex. Fam. Code Ann. § 153.002 (2002) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); *M.S.*, 115 S.W.3d at 549; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002) (reiterating legislature's mandate that best interest of child is primary consideration).  Consistent with legislative mandate, Texas courts have recognized that it is in the best interest of children to have "maximum reasonable visitation" with parents.  *See Wood v. Wood*, 510 S.W.2d 399, 400 (Tex. Civ. App.—Fort Worth 1974, no writ) (lamenting that divorced parents often allow their animosity towards one another to overshadow concern that children maintain healthy relationships with other parent, harming children whether resulting in constant conflict or gradual absence of one parent).  The *Wood* court's terminology is an incident of its time; the current family code does not use the word "visitation," and courts have adopted the view that a parent's time of possession and access

5

should not be considered "visiting with" that parent, but "living with" him or her. *See Norris v. Norris*, 56 S.W.3d 333, 335 n.1, 345 (Tex. App.—El Paso 2001, no pet.) (recognizing meaningful distinction between "visiting" and "parenting"). We should recognize that fit parents should be allowed not just to visit, but to parent their children.

Our legislature has pronounced its policy determination in all suits affecting the parent-child relationship:

> (a) The public policy of this state is to:
>
>> (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>>
>> (2) provide a safe, stable, and nonviolent environment for the child; and
>>
>> (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

Tex. Fam. Code Ann. § 153.001(a) (West 2002). It is incumbent upon courts to follow such public policy imperatives in interpreting the family code. *Lenz*, 79 S.W.3d at 14 (reviewing policy and applying it to modification and relocation context).

The legislature has implemented this policy by directing courts that "[t]he terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child *may not exceed* those that are *required* to protect the best interest of the child." Tex. Fam. Code Ann. § 153.193 (West 2002) ("Minimal Restriction on Parent's Possession or Access") (emphasis added). In order to protect children's abilities to have a meaningful relationship with their parents, the legislature determined that the standard possession

6

order would set a presumptive *minimum* amount of time for possession of a child by a joint managing conservator parent. *Id*. § 153.137 (West Supp. 2004-05). In its instructions how to apply the "guidelines established in the standard possession order," the legislature repeated its characterization of the periods as the minimum guaranteed to a joint managing conservator. *Id*. § 153.251 (West 2002) (standard order is "intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator or as the *minimum* possession for a joint managing conservator") (emphasis added).

Sadly, in many cases, trial courts attempting to dispose of messy divorces as equitably and expeditiously as possible simply automatically adopt the minimum outlined in the standard possession order without considering whether that order will impose limits upon possession and access in excess of those necessary to protect the best interests of the children. The trial court's emphasis on the standard possession order in this case is illustrative. The court, in granting Duck's request for Thursday overnight stays, explained, "That's in the standard possession schedule and there's no reason why he can't make that election and have the standard schedule that every other dad gets." In denying the Sunday night overnight request, the court opined that the standard possession order was appropriate and that it did not include that night.[2] The court awarded fees to the mother, although she only partially prevailed, because she had to defend against Duck's unpersuasive Constitutional claims, saying "I think that really if dad had just wanted a Thursday

---

[2] *But see* Tex. Fam. Code Ann. § 153.317 (West Supp. 2004-05) (extending evening periods including Sundays to the time school begins the following day).

overnight, pursuant to the standard schedule, that would have been hard for mom to resist," implying that, had Duck merely requested the statutory minimum, the court would not have awarded fees against him.[3] The court appears to have inadvertently substituted the word "reasonable" where the legislature used "minimum" in section 153.137's direction for the proper application of the standard possession order. The family code does not envision limiting a parent's time with a child to what "every other dad gets."

Courts have a responsibility to do more than automatically adopt a standard minimum. Instead, in making and reviewing these decisions we need to recognize that the circumstances of each case will dictate different custody arrangements and that, for the children of Texas, one size does not fit all. Reading sections 153.193 (allowing only necessary limitations on parent's access), 153.137 (standard order presumptive minimum), and 153.251 (standard order sets minimum for joint managing conservators) together, it appears that, to comply with the family code, every court that imposes limitations on a parent's right to possession of or access to a child by adopting the standard possession order has made an express or implied finding of fact that that particular limitation on the parent's time with the child is *required* to protect the best interests of the child. The legislature has declared a presumption that it is in the child's best interest to have the minimum amount of time with *any* reasonably safe parent, and it makes no sense—nor is it

---

[3] Also, the court repeatedly expressed concern that, because the children were thriving under the current order, it would be better to leave the schedule unchanged rather than risk disrupting the children. The idea that more time with a fit parent who is actively engaged in a child's life is potentially a risk or detrimental to a child runs counter to stated legislative policy favoring parental involvement in children's lives.

authorized—to blindly apply that same minimum of time to a parent who is not merely safe but is an interested and active influence in his or her child's life without regard to the degree of emotional engagement or bonding between the parent and child. Whatever latitude courts have in setting possession periods, they do not have the discretion to automatically adopt the minimum and ignore the legislature's explicit directive in section 153.193 to allow maximum feasible time with both parents unless doing otherwise would impair the children's interests.

**Standard of Proof and Standard of Review**

The legislature has not articulated a standard by which appellate courts should review orders setting possession periods; because trial courts are the fact-finders who determine what is in the children's best interest, appellate courts have applied an abuse of discretion standard of review. *See*, *e.g.*, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).[4] The discretion courts have in determining the factual issue of children's best interests, however, is not unfettered. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (non-exhaustively listing factors courts consider in determining whether termination of parental rights is in children's best interests); *See also In re Jane Doe 2*, 19 S.W.3d 278, 282 (Tex. 2000) (applying non-exhaustive list of *Holley* factors "for determining a minor's best interests" to factual determination of best interest of minor in parental notification case). The supreme court recognized in *Jane Doe 2* that a trial court should make

---

[4] Under the abuse of discretion standard, we defer to the trial court's findings because the trial court "is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned" from reading a cold record. *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex. App.—El Paso 2001, no pet.).

explicit fact findings regarding a child's best interest in order to allow meaningful appellate review. *See Jane Doe 2*, 19 S.W.3d at 282. Without such findings, it is impossible to meaningfully review any such decisions. *Id.*

Texas appellate courts' treatment of best interest determinations in the context of termination of parental rights is inconsistent with their treatment of the best interest determination trial courts are directed to make (and appellate courts must review) in custody and possession decisions. Termination findings, including the best interest finding, survive factual sufficiency challenges only if the following heightened standard is met; the evidence must be such that a reasonable fact finder could form a firm belief or conviction that the findings are correct. *C.H.*, 89 S.W.3d at 18-19. They survive legal sufficiency challenges where, in examining the evidence in the light most favorable to the findings and disregarding evidence a reasonable fact finder could have disbelieved, the appellate court determines that a reasonable fact finder could have formed a firm belief or conviction that the findings are correct. *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). This heightened standard is appropriate because cases involving termination of parental rights require the findings to be based upon clear and convincing evidence. *Id.* at 264 (citing *C.H.*, 89 S.W.3d at 25). Termination findings must be supported by clear and convincing evidence because termination of the parent-child relationship is a drastic remedy of such weight and gravity that due process requires the state to justify it by more substantial proof than a preponderance of the evidence. *C.H.*, 89 S.W.3d at 23.

Although custody and possession determinations as between parents are not as permanent or drastic as termination of parental rights, those issues can severely limit the relationship

and have the potential to profoundly impair the fundamental liberty interest of parents and children in the parent-child relationship.[5] Therefore, I would urge that the standard of proof in the trial court be re-examined. The standard of proof instructs the fact finder on the degree of confidence our society believes it should have in the correctness of factual conclusions for any given adjudication. *Santosky*, 455 U.S. at 754-55 (citing *Addington v. Texas*, 441 U.S. 418 (1979)). Thus, the standard reflects the weight and gravity of the interests affected and society's judgment about how the risk of error should be distributed. *Id*. at 755. The United States Supreme Court "has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Id*. at 756 (citing *Addington*, 441 U.S. at 424). The Court deemed this level of certainty necessary to preserve fundamental fairness in a variety of proceedings that threaten the individual involved with a significant deprivation of liberty. *Id*. Whether the loss threatened by any given proceeding is sufficiently grave to warrant requiring a heightened level of certainty turns on the nature of the private interest and the permanency of the threatened loss. *Id*. at 758. Where, as here, the threatened loss is compelling, increasing the burden of proof is a way to impress the fact finder with the gravity of the decision. *See id*. at 764-65.

The current court-created standard allows a trial court holding severely curtailing parental rights to stand so long as there is *some* evidence upon which to base its findings and an appellant does not show that the court failed to follow *any* guiding rules or principles. This standard

---

[5] For instance, the standard possession order completely subjects a parent's right to have any contact with her child to the discretion of the other parent during periods during which the child is in the other parent's possession, often for days or weeks at a time.

is inconsistent with the Constitutional nature and weighty import of the rights at issue. *See Troxel,* 530 U.S. at 72-73 (fundamental right of parents to rear children cannot be infringed simply because state court has decided it would be better for children). It presents a significant risk of erroneous deprivation of the most sacred of liberty interests of parents and children. *See id*. at 73 (citing *Pierce*, 268 U.S. at 534-35, which holds special liberty interest of parents includes right to direct upbringing of children); *M.S.*, 115 S.W.3d at 549 (significant risk of deprivation unacceptable).

It also falls far short of showing proper respect to the legislature's deliberate policy decisions commanding Texas courts to support and cultivate relationships between children and their parents so long as those parents are fit and to implement maximum parent-child contact to actively *preserve* family relationships often made all too fragile by parents' inabilities to set aside personal animosity long enough to recognize their children's need for their other parent. The current standards predate such policy determinations and thus, unsurprisingly, fails to take them into account. In *Gillespie*, the supreme court recited the abuse of discretion standard and supported it by reference to *Leithold v. Plass*, 413 S.W.2d 698, 700 (Tex. 1967), and former Texas Family Code sections 14.01 and 14.05. *See Gillespie*, 644 S.W.2d at 451. However, "*Leithold* is based entirely on common, judge-made law. It preceded the enactment of the Family Code, specifically section 153.131, which makes joint custody the public policy of this state." *Dennis v. Smith*, 962 S.W.2d 67, 69 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). *Leithold*, along with the standard it has propagated, is a relic of another time; it distinguished between a change in custody and a change in visitation, concepts the family code no longer favors, by reference to the superior rights one parent enjoyed over the other, which is "a fundamental difference" from the current family code policy

12

favoring joint managing conservatorship. *See Dennis*, 962 S.W.2d at 69 (also noting *Leithold* dissent's antiquated condemnation of "evil" of "split custody," apparently born from context in which "the law then endorsed sex discrimination in favor of women, giving them preference in child custody cases," and contrasting current norms embodied in joint managing conservator statute designed to undo that very construct). The differences between the current and original family code provisions similarly show that the old standard is no longer appropriate. Former chapter 14, governing conservatorship, possession, and access, envisioned appointment of *a* managing conservator, preferably a parent, essentially giving the trial court the choice between two possible conservators, a choice that was difficult for appellate courts to second-guess. *See* Act of May 25, 1973, 63d Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1422-26, repealed Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. Current family code chapter 153, governing conservatorship, possession, and access, no longer leaves that broad choice to the trial court; it has effectively chosen *both* parents as the children's conservators by providing for joint managing conservatorship, Tex. Fam. Code Ann. § 153.005 (West 2002), articulating the policy that parents should share in the rights and duties of child rearing and have frequent, continuing contact with the child, *id*. § 153.001, and mandating only minimal restriction on either parent's possession or access, *id*. § 153.193. Under former chapter 14, which contained ten sections, trial courts had broad discretion to determine and effectuate children's best interests. In current chapter 153, containing some sixty sections, in contrast, the legislature has specified and articulated preferences and guidance for courts making conservatorship and possession determinations. In short, the context that gave rise to the abuse of discretion standard of review in these cases—a court having to apply

13

presumptions in favor of one or the other parent and decide what is in a child's best interest based entirely upon the parties' credibility and other facts before it—no longer exists. Today's courts have guidance and responsibilities beyond those existing forty years ago, yet our persistence in applying a lesser standard still allows our judicial system to gloss over the legislature's directives and affirm a trial court's authority to rule on the barest of evidence if any reasonable mind could have reached the same conclusion.

Despite the United States Supreme Court's determination to subject infringement upon such fundamental rights to strict scrutiny and of our own legislature's mandate to preserve and foster parent-child relationships, Texas courts have developed a jurisprudence under which trial court decisions severely curtailing that relationship stand absent an abuse of discretion. *See Gillespie*, 644 S.W.2d at 451. Considering the importance of and the risk to the rights at issue and the legislature's clear mandates that courts take measures to protect this most sacred of relationships, I believe we need to carefully re-examine the standards by which decisions that limit a parent's access to or possession of a child are made and reviewed.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed:  July 14, 2005

14