



**MEMORANDUM OPINION**

No. 04-08-00883-CV

Robert A. **BRENDEL**,
Appellant

v.

Amanda L. **BRENDEL**,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 07-08-0616-CVA
Honorable Stella Saxon, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed: November 11, 2009

AFFIRMED

In this appeal from a final decree of divorce, Robert A. Brendel complains of the trial court's

orders for possession, child support, and medical support. We affirm.

## BACKGROUND

Robert and Amanda L. Brendel were married in March, 1994, and, during a thirteen-year marriage, had two children. After Robert and Amanda separated in June, 2007, Amanda filed a petition for divorce. Robert answered and counter-petitioned for divorce. In these pleadings, both Robert and Amanda asked the trial court to make appropriate orders for conservatorship, possession, child support, and medical support for their school-age children. Robert and Amanda participated in mediation and reached a settlement agreement on many of the issues raised in their pleadings; however, several issues concerning the children were not resolved in the mediation and were tried to the court.

At trial, Robert conceded Amanda should be named the joint managing conservator of the children with the exclusive right to designate the children's primary residence. Robert also asked the trial court to order: (1) a possession schedule that gave him and Amanda essentially equal possession time, and (2) no child support or, alternatively, child support set below the child support guidelines. The trial court denied Robert's request for nearly equal possession, but granted Robert expanded standard possession. The trial court denied Robert's request for no child support, but granted Robert's request to set child support below the child support guidelines, setting Robert's monthly child support at $200.00 per month less than the child support guidelines amount.

The trial court signed a final decree of divorce incorporating its own rulings and the terms of the mediated settlement agreement. The final decree names Amanda and Robert joint managing conservators of the children, awards Robert possession of the children according to an expanded standard possession order, orders Robert to pay monthly child support of $900.00 per month, orders

Amanda to provide health insurance for the children, orders Robert to pay additional child support in the amount of $56.83 per month to reimburse Amanda for the children's health insurance premiums, and allocates the children's uncovered health care expenses between Robert and Amanda. The decree also specifies that the children's reasonable and necessary health care expenses include orthodontic charges. On appeal, Robert complains of the trial court's orders for possession and child support, and the medical support provision addressing orthodontic charges.

## STANDARD OF REVIEW

As the reviewing appellate court, we give wide latitude to a trial court's decision on custody, control, possession, visitation, and child support matters. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Garza v. Garza*, 217 S.W.3d 538, 551 (Tex. App.–San Antonio 2006, no pet.). We reverse the trial court's decision only if it appears from the record as a whole that the trial court abused its discretion. *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Garza*, 217 S.W.3d at 549. In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review, and therefore, legal and factual sufficiency are not independent grounds of reversible error. *Id*. Instead, legal and factual sufficiency are factors relevant to our assessment of whether the trial court abused its discretion. *Id*. Thus, in considering whether the trial court abused its discretion because the evidence was legally or factually insufficient, we apply a two-pronged test: (1) did the trial court

have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *Id*. The applicable sufficiency review comes into play with regard to the first question. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then consider whether, based on the evidence, the trial court made a reasonable decision. *Id*.

### POSSESSION ORDER

In his first issue, Robert contends the trial court's possession order constitutes an abuse of discretion. In support of this contention, Robert asserts he presented overwhelming evidence to support his request for nearly equal possession time, including testimony and evidence that he was the primary caretaker of the children prior to the filing of the divorce, while Amanda presented no evidence in opposition to nearly equal possession time. Robert asserts the trial court's decision "is against the great weight and preponderance of the evidence and is so manifestly unjust that it renders the trial court's decision an abuse of discretion." Robert also asserts the trial court ignored guiding principles because it failed to follow the public policy of this state which encourages frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child.

A complaint that the trial court's decision is "against the great weight and preponderance of the evidence" and "is manifestly unjust" invokes a factual sufficiency review. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 632-33 (Tex. 1986), *disapproved on other grounds by Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). However, legal and factual sufficiency are not independent grounds of reversible error in family law cases. *Garza*, 217 S.W.3d at 549. Instead, legal and factual sufficiency constitute factors relevant to

the appellate court's assessment of whether the trial court abused its discretion. *Id*. Thus, the factual sufficiency of the evidence is a factor we consider in determining whether the trial court's possession order constitutes an abuse of discretion.

### 1. Applicable Law

The best interest of the child is always the primary consideration in determining issues of conservatorship and possession. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). "It is the policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child." *Id*. at § 153.251(b). Yet, there is no requirement that joint managing conservators be awarded equal or nearly equal periods of possession. *Id*. at § 153.135; *Garza*, 217 S.W.3d at 552.

When the order in this case was rendered, the Texas Family Code provided that the standard possession order in Subchapter F was a presumptive minimum amount of time for possession of a child by a parent named as a joint managing conservator who was not awarded the exclusive right to designate a child's primary residence. Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 12, 2003 Tex. Gen. Laws 2991, *repealed by* Act of June 19, 2009, 81st Leg., R.S., ch. 1113, § 31, 2009 Tex. Gen. Laws 3068. Subchapter F not only detailed the standard possession order, but also gave conservators the opportunity to expand possession beyond the minimum standard possession order, including (1) extending weekend and Thursday night periods of possession, (2) extending weekend periods of possession on holiday weekends, and (3) allowing weekend and Thursday night periods of possession to begin and end at alternative times. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1041, § 2, 2007 Tex. Gen. Session Laws 3595 (amended 2009) (current version at TEX. FAM. CODE

ANN. § 152.312(a) (Vernon Supp. 2009)); Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 154, 155 (amended 2009) (current version at TEX. FAM. CODE ANN. § 153.315(b) (Vernon Supp. 2009)); Act of May 23, 2003, 78th Leg., R.S., ch. 1036, §15, 2003 Tex. Gen. Laws 2992 (amended 2009) (current version at TEX. FAM. CODE ANN. § 153.317 (Vernon Supp. 2009)). Notably, these expanded possession periods did not operate automatically, but required the conservator to elect the expanded possession times before or at the time the order was rendered. And, section 153.312 gave the trial court the express authority to override a conservator's election to extend Thursday night possessions based on the child's best interest. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1041, § 2, 2007 Tex. Gen. Session Laws 3595 (amended 2009).

### 2. Analysis

In his brief, Robert characterizes the possession order in this case as a minimal standard possession order. We disagree with this characterization. The possession order in this case incorporates the expanded possession provisions available in the former sections 153.312, 153.315(b), and 153.317 of the Texas Family Code. As Amanda points out in her brief, the possession order in this case is "above and beyond the presumed [s]tandard [p]ossession [o]rder," awarding Robert all periods of possession in the minimum standard possession order, plus many expanded periods of possession, including overnight visits on Thursdays; overnight visits on the first, third, and fifth Sundays of each month; and extended summer vacation. In fact, in his briefing Robert describes the possession order as a "43%-57% split" and claims it affords him "almost equal possession time." The final possession order in this case is patterned after the temporary possession order. At the time of trial, Robert, Amanda, and the children had been operating under the temporary

possession order for about seven months. At trial, Robert described the temporary possession order as "an extended standard possession order, which is a significant difference from . . . just a standard possession order."

We also disagree with Robert's contention that the trial court's decision not to award him more possession time is against the great weight and preponderance of the evidence. Contrary to Robert's assertion, both Robert and Amanda presented evidence relevant to the possession issue. Robert testified he felt it was in the children's best interest for him to have nearly equal time with the children because he had been the primary caretaker since their infancy and he had spent more time with the children than Amanda. Robert described himself as a very "hands-on" parent. Robert believed he had always done more for his children than a normal father would do. Robert explained that when the children were babies he handled diaper changes and formula. Robert said once the children became school-age, he was the parent who dropped the children off at school every morning and picked them up from school every afternoon. Robert explained that he, not Amanda, had taken care of the children after school every day. Robert acknowledged that when Amanda had come home from work, he and Amanda shared the parenting responsibilities. Robert stated that he had spent every day of his life with his children, and it was very difficult for him to stop being a "hands-on" parent. Robert said he knew his diminished role was difficult for the children, too. Robert testified that he loved his children more than anything else in the world, and he would do anything to have them back and to see them every day.

Additionally, Robert testified he would like as much time as possible with the children, and he urged the trial court to divide the children's time almost equally between he and Amanda. Robert

stated he knew Amanda was not in favor of a possession schedule in which the children alternated households every seven days because it was too disruptive for the children. In light of Amanda's concerns, Robert proposed that he be awarded additional possession of the children by extending his possession on the first, third, and fifth weekends of each month to include Monday nights until school resumed on Tuesday mornings. According to Robert's calculations, these additional Monday night possessions would give him only five less days of possession than Amanda per year.

On the other hand, Amanda testified she was not in favor of increasing Robert's possession time beyond the time already provided in the temporary orders. In opposing increased possession by Robert, Amanda expressed concern about Robert's depression and his recent in-patient treatment for depression and suicidal thoughts. Amanda testified Robert's depression had been scary for the entire family, and the children did not see Robert for about two months during Robert's treatment. Amanda noted that less than a year had elapsed since Robert had completed his treatment, and she was still concerned about Robert having a bad weekend or a bad day while the children were in his possession. Amanda also pointed out that Robert's house was in a remote location and did not have a telephone. Amanda expressed concern that if an emergency were to arise, the children would have difficulty obtaining help.

In addition to Robert's depression, Amanda expressed concern about the children having to transition from one household to another any more than necessary. Amanda testified she was trying to maintain the house that they had lived in for the last seven years. Amanda said she believed it was important for the children to be in the house where they had grown up and to be surrounded by familiar things. Amanda testified that her parents, the children's grandparents, lived next door.

Amanda also stated that many of the children's friends lived in the same neighborhood. Amanda further stated she believed the time the children spent with her in her house would give them a feeling of security. Finally, Amanda testified that she was a very active, involved parent.

We conclude the trial court had ample evidence before it to make its decision, and its decision was not unreasonable. Based on the evidence, the trial court could have reasonably concluded it was not in the children's best interest for Robert to be awarded the additional possession times proposed by Robert. Although the evidence showed Robert was very involved in caring for the children for many years, the evidence also showed Amanda was an active, involved parent. The evidence also showed Amanda had assumed a more prominent role in caring for the children in the recent past. Moreover, the evidence showed the children were doing well under the schedule established by the temporary possession orders, experiencing no significant problems at home or in school.

We further conclude the trial court's possession order was not contrary to the public policy of this state to encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child. Accordingly, we hold the trial court's possession order does not constitute an abuse of discretion. Robert's first issue is overruled.

## CHILD SUPPORT

In his second issue, Robert contends the trial court erred by not setting child support further below the child support guidelines. Specifically, Robert contends the trial court's decision to set

child support at $200.00 per month below the child support guidelines was a "minimal variance" and "against the great weight and preponderance of the evidence and is manifestly unjust."

Although Robert couches this issue as a factual sufficiency complaint, in family law cases factual sufficiency is simply a factor relevant to our assessment of whether the trial court abused its discretion, not an independent ground of error. *See Garza*, 217 S.W.3d at 549. We review a child support order for a clear abuse of discretion. *Worford*, 801 S.W.2d at 109. The test for a clear abuse of discretion is whether the trial court's decision was arbitrary or unreasonable. *Id*.

To support his contention that the trial court should have set child support further below the child support guidelines, Robert directs us to two cases. In the first case, the trial court ordered no child support because the obligor had substantial possession time—approximately 38% of the year—with his child, had a two-year history of supporting his child without court-ordered support, and had assumed the debt on a house being maintained for the child. *Dennis v. Smith*, 962 S.W.2d 67, 73-74 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). There, the appellate court upheld an order for no child support under the abuse of discretion standard. *Id*. In the second case, the trial court set child support below the child support guidelines because, among other things, the obligee's earning potential was greater than or equal to the obligor's. *Stocker v. Magera*, 807 S.W.2d 753, 754 (Tex. App.—Texarkana 1990, no writ). Again, the appellate court upheld the support order under the abuse of discretion standard.[1] *Id*.

---

[1] After concluding the trial court did not abuse its discretion the appellate court qualified its holding by stating, "This conclusion does not necessarily mean that we would have set the support in a like manner, or that we agree that the support set is the most appropriate amount." *Stocker v. Magera*, 807 S.W.2d 753, 754-55 (Tex. App.–Texarkana 1990, no writ).

Nevertheless, the cases cited by Robert are not controlling here. First, the trial court's decisions in the cited cases depended in part on other facts and circumstances that are not present in the case before us. Second, even if the cases cited were identical to the case before us, the abuse of discretion standard allows for a wide range of decisions based on the same facts. *Decuir v. Decuir*, No. 03-00-00298-CV, 2001 WL 660683, at *4 (Tex. App.—Austin 2001, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)) (mem. op., not designated for publication). In other words, a holding that a trial court did not abuse its discretion by not ordering child support is not equivalent to a holding that the trial court in the same case would have abused its discretion by ordering child support. *Id*.

As additional support for his contention that the trial court should have set child support further below the child support guidelines, Robert emphasizes (1) the parties' "almost equal" possession time; (2) Amanda's significantly greater resources and greater ability to contribute to the support of the children; and (3) Robert's use of his separate property to establish college funds for the children. However, in making its decision the trial court was not limited to considering the factors emphasized by Robert in his briefing, but was obligated to consider other factors as well. *See* TEX. FAM. CODE ANN. § 154.123(b) (Vernon 2008).

The child support guidelines are intended to guide the trial court in determining an equitable amount of child support. *Id*. at § 154.121. The trial court may order an amount of support above or below the standard guidelines if the evidence rebuts the presumption that application of the guidelines is in the children's best interest and justifies a variance from the guidelines. *Id*. at

§ 154.123(a). In determining whether application of the guidelines would be unjust or inappropriate, the trial court shall consider evidence of all relevant factors, including:

- the ages and needs of the children;

- the ability of the parents to contribute to the support of the children;

- any financial resources available for the support of the children;

- the amount of time of possession of and access to the children;

- the amount of the obligee's net resources, including earning potential;

- child care expenses incurred by either party in order to maintain gainful employment;

- the expenses for a son or daughter for education beyond secondary school;

- provision for health care insurance and payment of uninsured medical expenses;

- positive or negative cash flow from any real and personal property and assets, including a business and investments;

- debts or debt service assumed by either party; and

- any other reason consistent with the best interest of the children, taking into consideration the circumstances of the parents.

*Id*. at § 154.123(b).

With these factors in mind, we review the evidence in the record. As detailed under our discussion of the first issue, the trial court heard evidence concerning Robert's possession and access to the children. Additionally, Robert testified about his earnings and his expenses. According to Robert's testimony, he was a lawyer employed by the Texas Attorney General's office. In 2007, Robert's gross income was $68,968.00. Additionally, Robert testified he received an inheritance

from his grandfather, and he used these separate property funds to establish college funds for the children.

Robert also testified about Amanda's earnings and other financial resources. According to Robert, Amanda's total income for 2007 was about $230,000.00. Robert believed Amanda's 2007 income included about $80,000.00 in salary from her employment, monetary gifts from her parents, and child support paid by him under the temporary orders. Robert also said Amanda owned a business.

Amanda testified about her earnings and expenses. Amanda, a college graduate who was employed by USAA, testified her gross employment income in 2007 was about $79,000.00 and she expected her 2008 employment income to be about the same. Amanda said she owned a business, but was in the process of shutting it down. Amanda explained the business had not produced income in the previous year and she was paying off about $19,000.00 in business-related debt. Amanda disputed that the exclusive source of the children's college funds was Robert's inheritance, maintaining that her family had contributed to the children's college funds, too. Amanda testified her average monthly expenses, including child care expenses, were $3,753.69. Amanda testified she had just refinanced her house in order to pay Robert the $88,000.00 due under the parties' property settlement agreement, and her mortgage payment after the refinancing was $1559.00 per month.

Amanda's father, John E. Goodwin, also testified. Goodwin stated that for a period of time he had given $80,000.00 per year to Amanda and Robert, but he would not be making similar gifts in the future because he was now retired.

After hearing all of the evidence, the trial court found Robert's net monthly resources to be $4,400.00 per month, and Amanda's net monthly resources to be $5,500.00 per month. Applying the proper percentage (25%) to Robert's net monthly resources, the trial court found Robert's guideline child support to be $1,100.00 per month. *See* Act of May 22, 2007, 80th Leg., R.S., ch. 620, § 2, 2007 Tex. Gen. Session Laws 1189 (amended 2009) (current version at TEX. FAM. CODE ANN. § 154.125(b) (Vernon Supp. 2009)). However, finding that "guideline support would cause a financial hardship for Mr. Brendel," the trial court varied from the guideline amount and ordered Robert to pay child support in the amount of $900.00 per month.

Based on the evidence presented, we conclude the child support order was not arbitrary or unreasonable. We hold the trial court's child support order did not constitute a clear abuse of discretion. Robert's second issue is overruled.

## MEDICAL SUPPORT

In his third issue, Robert argues the trial court erred in specifying that the children's reasonable and necessary health care expenses include orthodontic charges because there were no pleadings requesting the allocation of orthodontic expenses and "orthodontic expenses are usually cosmetic in nature." The medical support order in the final decree of divorce includes the following definition,

> "Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, opthamological, and *orthodontic charges*. These reasonable and necessary health-care expenses do not

include expenses for travel to and from the health-care provider or for nonprescription medication.

(emphasis added).

### 1. Pleadings

We first address Robert's complaint that the trial court erred because there were no specific pleadings requesting the allocation of orthodontic expenses. In his brief Robert argues, "Amanda [] never plead[ed] nor mentioned at trial orthodontic expenses as an issue" and, as a result, he had "no notice the issue may appear in a proposed final order." As support for this complaint, Robert cites only Texas Rule of Civil Procedure 301, which provides, in relevant part, "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." *See* TEX. R. CIV. P. 301.

The purpose of pleadings is to give an adversary notice of claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Service Corp.*, 809 S.W.2d 216, 218 (Tex. 1991) (holding under the facts of the case that the plaintiff was not required to specifically plead rescission). "All pleadings shall be construed so as to do substantial justice." TEX. R. CIV. P. 45. In family law matters, strict pleading requirements are not favored. *Rocha v. Villarreal*, 766 S.W.2d 895, 897 (Tex. App.—San Antonio 1989, no writ) (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)). Here, the pleadings filed by both Robert and Amanda asked the trial court to make provisions for the medical support of the children. We conclude the pleadings in this case satisfied the requisites of Rule 301.

### *2. The nature of orthodontic expenses*

The Texas Family Code provides the court shall render an order for the medical support of the child in a proceeding in which periodic payments of child support are ordered. TEX. FAM. CODE ANN. § 154.181(a)(1) (Vernon Supp. 2009). The version of the Texas Family Code in effect at the time the trial court rendered its medical support order provided that as additional support, the court shall allocate between the parties, according to their circumstances, the reasonable and necessary health care expenses of a child that are not reimbursed by health insurance. *See* Act of June 12, 2007, 80th Leg., R.S., ch. 363, §5, 2007 Tex. Gen. Session Laws 667 (amended 2009) (current version at TEX. FAM. CODE ANN. § 154.183 (Vernon Supp. 2009)).[2]

A trial court's medical support order will not be disturbed on appeal unless the complaining party shows that the order constituted a clear abuse of discretion. *See Holley v. Holley*, 864 S.W.2d 703, 706-07 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (providing a child support order will not be disturbed on appeal unless the complaining party shows a clear abuse of discretion). In determining if the trial court's medical support order constitutes a clear abuse of discretion, the reviewing court must indulge every legal presumption in favor of the trial court's judgment. *See id*. at 706.

In his brief, Robert asserts it was error for the trial court to specify that reasonable and necessary health care expenses include orthodontic charges because "[o]rthodontic expenses are usually cosmetic in nature." Nevertheless, Robert fails to cite any authority to support his argument.

---

[2] Section 154.183(c) now states the trial "court shall allocate between the parties, according to their circumstances, the reasonable and necessary health care expenses, *including vision and dental expenses*, of the child...." TEX. FAM. CODE ANN. § 154.183(c)(1) (Vernon Supp. 2009) (emphasis added).

Here, as the complaining party, the burden was on Robert to demonstrate that the trial court's definition of "reasonable and necessary health-care expenses" was a clear abuse of discretion. We conclude Robert has not met his burden to establish a clear abuse of discretion.

Robert's third issue is overruled.

## CONCLUSION

Having overruled all three of Robert's issues, we affirm the judgment of the trial court.

Karen Angelini, Justice